UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| FIRST NORTHERN BANK & TRUST COMPANY, FORMERLY THE FIRST NATIONAL BANK OF PALMERTON,<br><br>Plaintiff<br><br>v.<br><br>THE UNITED STATES OF AMERICA (INTERNAL REVENUE SERVICE),<br><br>Defendant | CIVIL ACTION NO. 3:13-CV-01446<br><br>(MEHALCHICK, M.J.) |

**MEMORANDUM OPINION**

On April 29, 2013, Plaintiff First Northern Bank & Trust Company, formerly The First National Bank of Palmerton, (the "Bank") filed this action to quiet title in the Court of Common Pleas of Monroe County, Pennsylvania, docketed to Civil Action No. 3471-CV-13. (Doc. 1-2). On May 29, 2013, Defendant United States of America, Internal Revenue Service ("IRS") removed the civil action to the United States District Court for the Middle District of Pennsylvania pursuant to Title 28 U.S.C. § 1441. (Doc. 1). The case is presently before the Court on cross motions for summary judgment. (Doc. 16; Doc. 17). There are no material issues of fact in dispute in this case and the only question before the Court is the proper application of 26 U.S.C. § 7425 to the facts; thus, summary judgment is an appropriate vehicle for disposition of the action.

I. **FACTUAL AND PROCEDURAL BACKGROUND**

The issue in this matter is whether two IRS tax liens, placed on property which was subsequently purchased by the Bank should survive a Pennsylvania tax sale pursuant to 72 P.S. § 5860.610 of the Pennsylvania Real Estate Tax Sale Law (RETSL).[1] The subject property is situated at Lot 137A, Hamilton Township, Monroe County, Pennsylvania, Tax Parcel No. 07/92173. (Doc. 1-2, p. 11). Prior to May 2012, the property was owned by Lori A. Sinisgalli. The IRS assessed outstanding income tax liabilities against Sinisgalli for tax years 2005, 2006, 2007, and 2008, and the Trust Fund Recovery Penalty (TFRP) assessed liabilities for several tax periods. (Doc. 18, p. 2). On May 16, 2011 and October 17, 2011, Notices of Federal Tax Liens were filed in the Office of the Prothonotary for Monroe County for income taxes and Trust Fund taxes, respectively. (Doc. 1-2, pp. 16-17). Additionally, the Bank had a first lien mortgage on the property for $400,000.00. (Doc. 21, p. 9).

On September 14, 2011, the subject property was exposed for a public upset sale for unpaid taxes for the 2009 tax year, but the property was not sold at the upset sale due to insufficient bids. (Doc. 15-5, pp. 2-3). On December 27, 2011, the Tax Claim Bureau of Monroe County filed a Petition for Rule to Sell Properties at Judicial Tax Sale Free and Clear of all Liens, Claims, and Encumbrances. *In Re: 2012 Judicial Tax Sale*, Docket No. 11247 CIVIL 2011 (C.C.P. of Monroe County filed Dec. 27, 2011) (Doc. 15-5). On December 28, 2011, the Court of Common Pleas of Monroe County issued a Rule to Show Cause Order against interested parties "to show cause why the property described therein should not be sold free and clear of

---

[1] Act of July 7, 1947, P.L. 1368, as amended, 72 P.S. §§ 5860.101-5860.803.

all taxes and municipal claims, liens, mortgages, charges and estates of whatsoever kind, except separately taxed ground rents." (Doc. 15-4, p. 2; Doc. 22, p. 23). On January 24, 2012, the IRS was served with the Rule to Show Cause Order. (Doc. 15-3). The Tax Claim Bureau of Monroe County filed a Motion to Make Rule Absolute and to Confirm Sale Date. (Doc. 22, pp. 26-27). On March 20, 2012, following a hearing, the Court of Common Pleas of Monroe County issued an Order making the Rule absolute. (Doc. 22, p. 29).

On May 2, 2012, the property was exposed to a free and clear tax sale pursuant to 72 P.S. §§ 5860.610-612 and the Bank purchased the property. (Doc. 15, p. 2). A Tax Claim Bureau Deed was issued to Plaintiff on May 7, 2012, and recorded on May 31, 2012. (Doc. 15-1). The Bank filed an application for Certificate of Discharge with the IRS, and the IRS denied the application on February 1, 2013. (Doc. 1-2, pp. 7, 21-25). The Bank then filed a Collection Appeal regarding the denial of the application for a Certificate of Discharge, and the IRS denied the appeal on April 9, 2013. (Doc. 1-2, pp. 7, 27-44).

On April 29, 2013, the Bank filed a quiet title action in the Court of Common Pleas of Monroe County, docketed to Civil Action No. 3471-CV-13. (Doc. 1-2). On May 29, 2013, the IRS removed the civil action to the United States District Court for the Middle District of Pennsylvania pursuant to 28 U.S.C. § 1441. (Doc. 1). The parties consented to proceed before a United States magistrate judge in accordance with 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73. (Doc. 8; Doc. 9). On December 30, 2013, both parties filed a motion for summary judgment. (Doc. 16; Doc. 17). On May 5, 2014, this Court held oral argument in this matter. This matter is now ripe for disposition.

II. **SUMMARY JUDGMENT STANDARD**

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment should be

granted only if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" only if it might affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute of material fact is "genuine" only if the evidence "is such that a reasonable jury could return a verdict for the non-moving party." *Anderson*, 477 U.S. at 248. In deciding a summary judgment motion, all inferences "should be drawn in the light most favorable to the non-moving party, and where the non-moving party's evidence contradicts the movant's, then the non-movant's must be taken as true." *Pastore v. Bell Tel. Co. of Pa.*, 24 F.3d 508, 512 (3d Cir. 1994).

The party seeking summary judgment "bears the initial responsibility of informing the district court of the basis for its motion," and demonstrating the absence of a genuine dispute of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the movant makes such a showing, the non-movant must set forth specific facts, supported by the record, demonstrating that "the evidence presents a sufficient disagreement to require submission to a jury." *Anderson*, 477 U.S. at 251–52.

III.   **DISCUSSION**

The parties do not dispute the facts of this case. On May 2, 2012, a free and clear tax sale ("the sale") was held pursuant to 72 P.S. § 5860.610 of the Pennsylvania Real Estate Tax Sale Law (RETSL). Both parties move for summary judgment based on whether the sale was a judicial or nonjudicial sale under 26 U.S.C. § 7425. Different notice requirements are mandated under 26 U.S.C. § 7425 depending on whether the sale is characterized as judicial or nonjudicial. Both parties concede that if the tax sale were a judicial sale, the United States did

not receive proper notice and judgment should be entered in favor of Defendant.[2] Conversely, the parties agree that if this Court determines that the tax was a nonjudicial sale or other sale pursuant to 26 U.S.C. § 7425(b), then the applicable service requirements were satisfied by the Monroe County Tax Claim Bureau and the tax sale divested the federal tax liens from the property; thus, summary judgment in favor of Plaintiff would be appropriate. (Doc. 32, p. 3; Trans. 23, 32). As such, the dispositive issue in this matter is whether the sale was a judicial sale under 26 U.S.C. § 7425(a) or a nonjudicial sale under 26 U.S.C. § 7425(b).

    A. TAX LIEN ACT OF 1966

The Federal Tax Lien Act of 1966[3] enacted 26 U.S.C. § 7425 to protect the United States, where its tax lien is junior, from its discharge under state law without prior notice to the United States of proceedings by which the property is sold. *Myers v. United States*, 647 F.2d 591, 595-96 (5th Cir. 1981). Prior to the Tax Lien Act of 1966, the federal government was confronted with the problem of having its junior tax liens discharged without having had notice of the proceedings. *Galesi v. United States*, 406 F. Supp. 623, 625 (D. Vt. 1976) *aff'd*, 544 F.2d 606 (2d Cir. 1976). In cases where the interests of a junior lienholder could be eliminated without notice, the government was prevented from taking steps to protect its interests in the collection

---

[2] In its motion for summary judgment, the Bank originally contended that the notice requirements were proper even if the Court finds that the tax sale were a judicial sale. However, in oral argument and in the Bank's supplemental brief following oral argument (Doc. 30; Trans. 19), Plaintiff no longer contests that Defendant did not receive proper notice for a judicial sale. "If this Court determines the Tax Sale was a judicial sale then the County would have had to comply with the service requirements of 26 U.S.C. § 2410 [*sic*], which all parties agree was not done." (Plaintiff's Supplemental Br., Doc. 32, p. 3).

[3] Act of November 2, 1966, Pub. L. No. 89-719, Titles I, II, 80 Stat. 1140-41, 1147.

of revenues. *See* S. Rep. No. 1708, 89th Cong., 2d Sess. (1966), U.S. Code Cong. & Admin. News, p. 3722. For this reason, the Tax Lien Act of 1966 added provisions to the Internal Revenue Code designed to protect the United States, where it is a junior lienholder, from having its lien extinguished without having had notice of judicial and nonjudicial sale proceedings. *Galesi*, 406 F. Supp. at 625.

The methods by which an inferior tax lien of the United States may be discharged under local law are now set out in 28 U.S.C. § 2410 and 26 U.S.C. § 7425, which supplements 28 U.S.C. § 2410 by providing a uniform set of federal rules for determining the effect of such proceedings upon a junior tax lien. When the United States is not joined as a party to the proceedings, the statutory scheme embodied in this section draws a distinction between sales pursuant to "judicial proceedings," the effect of which is governed by 26 U.S.C. § 7425(a), and "other sales," the effect of which is governed by 26 U.S.C. § 7425(b).

In the instant case, the United States was not joined as a party and therefore 26 U.S.C. § 7425 applies. *See A.H. and R.S. Coal Corp. v. United States*, 461 F.Supp. 752, 754 (W.D. Pa. 1978); *Wells Fargo Bank, N.A. v. Carr*, No. 04-2792, 2007 WL 518150, at *2 n.3 (M.D. Pa. Feb. 12, 2007). The first of these rules, 26 U.S.C. § 7425(a), applies where the United States is not joined as a party and there is a judgment in a civil action, as described in 28 U.S.C. § 2410(a) or a sale pursuant to such a judgment. In a judicial sale pursuant to 26 U.S.C. § 7425(a), the tax liens will not divest unless the United States is joined as a party and receives proper notice. The IRS argues that the tax sale was a judicial sale pursuant to 26 U.S.C. § 7425(a) and because the Monroe County Tax Claim Bureau did not provide sufficient notice of the tax sale to the United States, as mandated under 28 U.S.C. § 2410 and 26 U.S.C. § 7425(a), the tax sale did not divest the federal tax liens. (Doc. 18, pp. 5-8).

The effect of a nonjudicial sale of property, on which the United States claims a lien, is governed by 26 U.S.C. § 7425(b). In a nonjudicial sale pursuant to 26 U.S.C. § 7425(b), the notice requirements only demand that the IRS receive written notice within 25 days of the sale, and that the IRS file its lien more than 30 days preceding the sale. 26 U.S.C. § 7425(b), (c). The Bank argues that the tax sale was a nonjudicial sale pursuant to 26 U.S.C. § 7425(b) and the Monroe County Tax Claim Bureau complied with the 26 U.S.C. § 7425(b) notice requirements. (Doc. 16, ¶ 10). Thus, the Bank contends that because the United States received proper notice pursuant to § 7425(b), for a nonjudicial sale, the May 2, 2012, tax sale divested the federal tax liens from the property.

>    B. THE STATUTORY NOTICE REQUIREMENTS OF 28 U.S.C. § 2410 AND 26 U.S.C. § 7425(A) FOR JUDICIAL PROCEEDINGS

The parties concede that the statutory requirements of 28 U.S.C. § 2410 were not met. (Doc. 32, p. 3; Trans. 19). Specifically, the United States was not joined as a party to the action and the United States did not receive proper notice. The Monroe County Tax Claim Bureau failed to name the United States as a party in its "Petition for Rule to Sell Properties at Judicial Tax Sale Free and Clear of All Liens, Claims and Encumbrances." (*See* Doc. 22, p. 19). Further, the Monroe County Tax Claim Bureau did not make proper service of the complaint and court process on the United States Attorney for the Middle District of Pennsylvania and the Attorney General of the United States in Washington, District of Columbia. 28 U.S.C. § 2410(b).

Title 26 U.S.C. § 7425 provides:

> (a) Judicial proceedings.--If the United States is not joined as a party, a judgment in any civil action or suit described in subsection (a) of section 2410 of Title 28 of the United States Code, or a judicial sale pursuant to such a judgment,

7

> with respect to property on which the United States has or claims a lien under the provisions of this title –
>
> (1) shall be made subject to and without disturbing the lien of the United States, if notice of such lien has been filed in the place provided by law for such filing at the time such action or suit is commenced, [. . .].

26 U.S.C. § 7425(a)(1).

The United States Court of Appeals for the Third Circuit and district courts within the Third Circuit in Pennsylvania have addressed this issue. In *United States v. Aultman*, an unpublished decision from the Western District of Pennsylvania, the court held that: "Where the United States has not been named a party in accordance with § 2410, the lien survives. *See* 26 U.S.C. § 7425." *United States v. Aultman*, No. 04-1153, 2006 WL 544401, at *2 (W.D. Pa. Mar. 6, 2006). The plaintiff in that case advanced the argument that the United States still received *actual* notice of the judicial tax sale and that such notice satisfied the statutory requirements. The court disagreed with this argument, stating that there was no authority to support the theory that actual notice satisfied the statutory requirements; rather, the court held that statutory notice is required. *Aultman*, 2006 WL 544401, at *3.

In *Capobianco*, the Third Circuit suggested that actual notice may suffice; however, in that case, unlike in *Aultman*, the United States was named as a party. *United States v. Capobianco*, 836 F.2d 808 (3d Cir. 1988). The Third Circuit held that the purpose of 28 U.S.C. § 2410 was satisfied when the government received "actual, timely notice." *Capobianco*, 836 F.2d at 817. In discussing the Third Circuit's decision in *Capobianco*, the *Aultman* court noted that:

> While the [*Capobianco*] decision *may* suggest that actual, rather than statutory notice suffices, I note that the United States was a *party* to that action. Here, the United States was not. Further, in *Capoblanco* [*sic*], notice of the sale was mailed to the United States Attorney for the Eastern District of Pennsylvania and to the Attorney General in Washington, D.C. Thus, copies of the proceedings were

actually provided to the individuals identified in the statute. Here, those individuals identified in the statute were not given copies of anything.

*Aultman*, 2006 WL 544401, *3 n.2.

This Court has considered the issue of statutory notice and determined that nothing short of statutory notice will suffice. *See Acquisto v. United States*, No. 08-2184, 2010 WL 2852900 (M.D. Pa. June 30, 2010) (lien survives when improper service of process made on the United States). In the instant case, the Court finds that the United States did not receive satisfactory notice pursuant to the statutory requirements of 28 U.S.C. § 2410. The Monroe County Tax Claim Bureau did not name the United States as a party to the action as provided in 28 U.S.C. § 2410. Further, service was not made upon the United States Attorney for the Middle District of Pennsylvania or the Attorney General of the United States in Washington, D.C. pursuant to 28 U.S.C. § 2410(b). (*See* Doc. 1-2, p. 43). Thus, the statutory notice requirements were not satisfied pursuant to 28 U.S.C. § 2410. *See Aultman*, 2006 WL 544401; *Acquisto*, 2010 WL 2852900.

C. CHARACTERIZATION OF THE SALE AS A JUDICIAL OR NONJUDICIAL SALE

The United States Supreme Court in *United States v. Brosnan* recognized that the use of liens enmeshed federal law "into an area of complex property relationships long since settled and regulated by state law," and adopted state law as the rule of decision for the divestment of tax liens. *United States v. Brosnan*, 363 U.S. 237, 241-42 (1960). Although state law controls how a federal tax lien is divested, *Wells Fargo Bank, N.A.*, 2007 WL 518150, at *2, "the interpretation of 'judicial sale' under section 2410 is a matter of federal law." *Capobianco*, 836 F.2d at 816. The

parties concede that whether the tax sale was a judicial sale is governed by federal law.[4] (Trans. 3, 10).

Thus, in order to determine whether the federal tax liens at issue in this case were divested, the Court must determine whether the tax sale was a judicial or nonjudicial sale based on 26 U.S.C. § 7425. *See A.H. & R.S. Coal Corp.*, 461 F. Supp. at 755. " 'What may accurately be denominated as a judicial sale is not very well settled' but a judicial sale must have certain basic ingredients." *A.H. & R.S. Coal Corp*, 461 F. Supp. at 755 (quoting *City of New Castle v. Whaley's Heirs*, 102 Pa. Super. 492, 496, 157 A. 503, 504 (1931)). A judicial sale is distinct from an execution sale which may "issue by mere praecipe of the judgment creditor." *A.H. & R.S. Coal Corp*, 461 F. Supp. at 755 (citing *Yazoo & M.V.R. Co. v. City of Clarksdale*, 257 U.S. 10, 19 (1921); *United States v. Branch Coal Corp.*, 390 F.2d 7, 9-10 (3d Cir. 1968)). To be classified as a judicial sale, the sale "must be based upon an order, decree or judgment *directing* sale." *A.H. & R.S. Coal Corp.*, 461 F. Supp. at 755 (quoting *Baton Coal Co. Appeal*, 365 Pa. 519, 523, 76 A.2d 194, 196 (1950)). In the instant matter, the Bank argues that the Court should differentiate between "summary proceedings" and "plenary proceedings" to determine whether a proceeding is a judicial sale, whereas the IRS argues that sovereign immunity dictates that the scope of a judicial sale should not be so narrowly defined.

To contextualize these arguments, it is important to understand the process of a Pennsylvania tax sale. When a property owner is delinquent in paying taxes, an upset tax sale is

---

[4] Although the IRS stated in its brief in support of its motion for summary judgment that a judicial sale is determined by Pennsylvania law, (Doc. 18, p. 5), the IRS stated in oral argument that it does not dispute that the interpretation of a judicial sale is governed by federal law. (Trans. 3, 10).

conducted pursuant to 72 P.S. §§ 5860.601-609 of the Pennsylvania Real Estate Tax Sale Law (RETSL). *See In re Sale No. 10*, 801 A.2d 1280, 1281 n.3 (Pa. Commw. Ct. 2002). When the upset price is not bid, the Tax Bureau may petition the Court of Common Pleas for permission to conduct a tax sale pursuant to 72 P.S. § 5860.610 ("In cases where the upset price shall not be bid at any such sale, the sale shall be continued . . . the court shall grant a rule upon all parties thus shown to be interested to appear and show cause why a decree should not be made that said property be sold, freed and cleared of their respective tax and municipal claims, liens, mortgages, charges and estates, except separately taxed ground rents."). If, upon hearing, the court is satisfied that service of the rule has been made upon the interested parties and the facts stated in the petition are true, the court shall grant the petition and order the property be sold at a free and clear tax sale. 72 P.S. §§ 5860.611-612.

The process of the May 2, 2012, tax sale was as follows: the Monroe County Tax Claim Bureau filed a Petition for Rule to Sell Properties at Judicial Tax Sale Free and Clear of all Liens, Claims, and Encumbrances. The parties in interest were served with a Rule to Show Cause Order filed by the Court of Common Pleas of Monroe County. The Monroe County Tax Claim Bureau filed a Motion to Make Rule Absolute and to Confirm Sale Date. Finally, the Court of Common Pleas of Monroe County, following a hearing, issued an Order making the Rule absolute. (*See* Doc. 22, pp. 19-31).

### 1. The Bank's Plenary/Non-Plenary Argument

It is clear from the record that the tax sale was held pursuant to a court order. (*See* Doc. 22, p. 29). However, the Bank urges this Court to differentiate between what it deems a "summary proceeding" and a "plenary proceeding." Specifically, the Bank submits that, just because the "free and clear tax sale" in the Pennsylvania vernacular is referred to as a judicial

11

sale, does not mean that the tax sale is defined as such under the federal statute. (Doc. 30; Trans. 2). The Bank further argues that the type of sale in this case, even though it is called a judicial tax sale, is, in fact, a non-judicial tax sale under Federal Law. (Doc. 30; Trans. 4). The Bank argues that the Court should look beyond the terminology of a Pennsylvania judicial tax sale and analyze the underlying proceeding to determine how to characterize it pursuant to the federal statute. Specifically, the Bank asks this Court to find that the tax sale was a nonjudicial sale under 26 U.S.C. § 7425(b) because the sale did not require a plenary judicial proceeding. (Doc. 30; Trans. 3). This argument is premised on the concept that, because the tax sale was initiated with a petition and a rule to show cause order, without a named defendant or respondent, the proceeding is a summary proceeding and not "plenary" enough to constitute a judicial sale. (Doc. 30; Trans. 3-4). Thus, under the plenary approach, the Bank urges this Court to find that that the May 2, 2012, free and clear tax sale was a nonjudicial sale.

The Bank avers that the plenary approach has been adopted by several federal courts and that this Court should adopt this approach and hold that only tax sales based on plenary judicial proceedings qualify as judicial sales. In support of this position, the Bank relies on three federal court cases: *Myers v. United States*, 647 F.2d 591 (5th Cir. 1981); *Galesi v. United States*, 406 F. Supp. 623 (D. Vt. 1976), *aff'd*, 544 F.2d 606 (2nd Cir. 1976); and *Midway-Finance Corp., Ltd. v. Walters*, 1991 WL 191248 (D. Haw. July 5, 1991), *aff'd sub nom.* 980 F.2d 737 (9th Cir. 1992).[5]

---

[5] Plaintiff also states that the Eleventh Circuit supports its position pursuant to *Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981), which created the Eleventh Circuit and retroactively adopted Fifth Circuit precedent. This case does not discuss the plenary/non-plenary distinction or judicial sales.

In *Myers*, the court held that a foreclosure proceeding held pursuant to Louisiana's executory process was a nonjudicial sale pursuant to 26 U.S.C. § 7425(b). *Myers*, 647 F.2d at 601. Under the plenary approach, 26 U.S.C. § 7425(a) would apply only to judicial sales held pursuant to "plenary judicial proceedings embodying the procedures associated with a complete and formal hearing on the merits, as distinguished from a more informal summary determination." *Myers*, 647 F.2d at 599. *Myers* further explained that the legislative history of 26 U.S.C. § 7425 supports this plenary approach. *Myers* examined the Louisiana executory process and explained that it is "an expedited in rem action derived from the civil law. . . By means of the executory process, a creditor may effect the seizure and sale of property in an ex parte proceeding, without previous citation and judgment, in order to enforce a mortgage or privilege that is evidenced by an authentic act importing a confession of judgment." *Myers* 647 F.2d at 597. *Myers* stated that the order may be issued by a judge, or by the clerk of court in the exercise of his quasi-judicial powers, and is not considered a judgment "in any technical sense." *Myers*, 647 F.2d at 597. *Myers* concluded that "[s]ince Louisiana's executory foreclosure proceeding is not a plenary judicial proceeding, it necessarily falls within the ambit of § 7425(b). *Myers*, 647 F.2d at 601.

*Galesi*, another case relied on by Plaintiff, deals with a situation where the United States had constructive notice of a state court foreclosure action but chose not to intervene and assert its tax lien in such action. *Galesi*, 406 F. Supp. 623. *Galesi* distinguished between a "plenary judicial action" and a "nonjudicial action" and gave as an example of a nonjudicial action an execution of a power of sale contained in a senior security instrument. The court stated that "Subsection (b) of 7425 applies in cases where the sale of the subject property is made outside the framework of plenary judicial action. Here the plaintiff's redemption of the mortgaged

13

property was accomplished in response to the judgment of foreclosure entered in the state proceedings." *Galesi*, 406 F. Supp. at 627. The court ultimately concluded that a 26 U.S.C. §7425(a) judicial sale was at issue in that case. Neither *Myers* nor *Galesi* defined "judicial sale"; although the cases briefly differentiated between a plenary and non-plenary proceeding, they do not bring this Court any closer to defining the scope of a "plenary proceeding."

*Midway*, the third case relied on by Plaintiff, brings the Court only marginally closer to defining judicial sale. *Midway*, 1991 WL 191248. The case involved a sale pursuant to a writ of execution. The parties in *Midway* disagreed over whether the proceeding at issue was a "judicial sale." The plaintiffs in that matter argued that the sale of the subject property was "clearly a judicial sale because it was held pursuant to a stipulated judgment after extensive state court proceedings. On the other hand, the United States argue[d] that the sale was not the result of plenary judicial proceedings *ordering* the sale, but of a stipulated judgment providing merely for money damages, and thus was not a judicial sale." *Midway*, 1991 WL 191248, at *3. *Midway* relied on the language in *A.H. and R.S. Coal Corp.* in its analysis of a judicial sale and determined that "[t]o be classified as a judicial sale, the sale must be based upon an order, decree or judgment *directing* the sale." *Midway*, 1991 WL 191248, at *4 (citing *A.H. and R.S. Coal Corp. v. United States*, 461 F.Supp. 752, 755 (W.D. Pa. 1978)) (internal quotations omitted). Based on this language, *Midway* found that the court did not specifically order the sale of the property in the judgments and the sale was therefore not a "judicial sale" under the terms of 26 U.S.C. § 7425(a). *Midway*, 1991 WL 191248, at *4. *Midway* concluded that a stipulated judgment providing for money damages was not a judicial sale because the judgment provided only for the recovery of money damages and did not order the sale of the subject property in order to satisfy the judgment. *Midway*, 1991 WL 191248, at *4.

In analyzing these three cases relied on by the Bank, the Court finds none of them to be persuasive in deciding the instant matter. While the Bank urges the Court to adopt a plenary/non-plenary distinction, it fails to provide any reasoning or authority for the position that a court order, issued in response to an initial petition, rule to show cause and hearing, warrants this approach. In the present case, the Court of Common Pleas of Monroe Court issued an order directing the sale of property; whereas, the cases relied on by the Bank merely point to the proposition that a nonjudicial sale encompasses an executory process (*Myers*), an execution of a power sale (*Galesi*), and a writ of execution (*Midway*). Further, the decision in *A.H. and R.S. Coal Corp.* indicates an execution sale issued by a praecipe of the judgment creditor is a nonjudicial sale, 461 F.Supp. at 755, while *Capobianco* indicates that a Pennsylvania mortgage foreclosure proceeding is a judicial sale. *Capobianco,* 836 F.2d at 817.

The Bank argues that a proceeding subject to a rule to show cause order must similarly be defined as a non-plenary, summary proceeding because such a proceeding lacks the elements of a full plenary proceeding. In support of this argument the Bank submits that the Pennsylvania tax sale only requires a rule to show cause petition, a rule upon all parties to show cause why their liens should not be discharged, and a rule to show cause hearing. (Doc. 21, p. 22). Thus, the Bank argues, this proceeding, initiated with a petition and rule to show cause order, must be deemed non-plenary because it "did not require the County or any party with an interest in the Property to file a complaint, answer or other pleadings normally associated with a civil action." (Doc. 21, p. 22).

In *Acquisto v. United States*, this Court considered and rejected a similar argument. *Acquisto v. United States*, No. 08-2184, 2010 WL 2852900 (M.D. Pa. June 30, 2010) *report and recommendation adopted sub nom. Acquisto v. United States*, No. 08-2184, 2010 WL 2852910 (M.D.

15

Pa. July 20, 2010). In *Acquisto*, the plaintiff asked the court to consider the tax sale exempt from the statutory requirements because the sale was initiated through a "rule to show cause" rather than a "complaint or pleading." *Acquisto*, 2010 WL 2852900, at *3. Thus, the plaintiff argued that the tax sale proceeding should not be subject to the 28 U.S.C. § 2410(b) service requirements:

> The plaintiff seeks to justify his argument and position in part by asking the court to hold the state court judicial sale proceeding between the Tax Claim Bureau and the land owner to be a proceeding not subject to the 28 U.S.C. § 2410(b) service requirement because the proceeding is one in which a lien holder is served not with a complaint or a pleading, but with a rule to show cause.

*Acquisto v. United States*, 2010 WL 2852900, at *3.

The court in *Acquisto* rejected this argument, stating "[w]e do not construe 'complaint or pleading' as used in 28 U.S.C. § 2410(b) in this context as narrowly as the plaintiff advocates, but we see that argument as inapposite." *Acquisto*, 2010 WL 2852900, at *4. Similarly, in the present case, the Bank asks this Court to characterize the tax sale proceeding on the basis that, because it was initiated by a "rule to show cause" versus a "complaint or pleading," the proceeding is subject to different statutory requirements. This argument was explicitly rejected in *Acquisto* where this Court declined to narrowly draw the line between the filing of a "complaint" and a "petition." Moreover, the rationales in the decisions of the courts in *Midway* and *A.H. and R.S. Coal Corp.* support the proposition that the tax sale is a judicial sale. Both cases indicate that a court must order the sale, i.e. *direct the sale*, of the subject property. In the instant case, the Court is presented with such a situation. (*See* Order Doc. 22, p. 29) (Court of Common Pleas of Monroe County issuing order directing sale of property at judicial tax sale on May 2, 2012). Although the Bank has presented cases that show that some federal courts have differentiated between plenary and non-plenary proceedings, it has failed to present any

authority for its assertion that a tax sale, initiated by a petition and rule to show cause order, and concluding with a court order directing the sale of property, would fall within the ambit of a non-plenary proceeding.

### 2. The Government's Sovereign Immunity Argument

The IRS also argues that sovereign immunity dictates that a federal tax lien may not be divested without the consent of the United States. A similar argument was made by the United States in *Acquisto*, 2010 WL 2852900, at *2 n.4 ("The United States argues in essence that there is not a basis for the court to enter an order that disturbs the status quo. The sovereign immunity of the United States is cited by the United States as an essential component of the status quo here; i.e., in the absence of full compliance with 28 U.S.C. § 2410(b), the United States has not consented to be joined in an action to quiet title or to be judicially ordered to relinquish its liens."). In the instant case, the IRS further argues that, in addition to the statutory requirements, the Court should also consider the underlying policy that "any waiver of sovereign immunity must be construed strictly in favor of the sovereign and not enlarged beyond the language it requires." (Doc. 30; Trans. 7). This argument is in line with *Acquisto*, where the court rejected narrowing the scope of 28 U.S.C. § 2410(b) and reading into the statute a distinction between proceedings initiated by a "complaint and pleading" versus "a rule to show cause" – a distinction the IRS argues the sovereign has not consented to waive. In essence, the IRS argues that the Bank is seeking to expand the scope of what the sovereign has waived by using this plenary/non-plenary terminology and enlarging the sovereign's waiver of sovereign immunity beyond what is permitted. (*See* Doc. 30; Trans. 12).

The IRS further argues that there is not a clear demarcation between what is a "summary proceeding" versus a "plenary proceeding," and that such a distinction is not helpful

"in terms of deciding whether the sovereign has waived its immunity for one versus the other." (Doc. 30; Trans. 10). The IRS states the distinction merely presents an uncertain "sliding scale" approach. (Doc. 30; Trans. 32-33). Rather, the IRS argues that *Capobianco* stands for the proposition that Congress wished to prevent the discharge of federal tax liens in circumstances where the government was not given notice and an opportunity to protect its interest. (Doc. 30; Trans. 11-12). Thus, it argues that a judicial sale must assume the coloration of the background against which it appears, namely, that 28 U.S.C. § 2410 was intended to protect the government's interests. (Doc. 30; Trans. 29). *See Capobianco*, 836 F.2d at 817 ("This elusive term assumes its coloration in each instance from the background against which it appears.").

The Court agrees that the plenary/non-plenary approach is problematic and could very well present this Court with a difficult-to-define "sliding scale" approach. The Bank argues for the application of a bright-line rule for this approach – that a proceeding should be defined at its genesis (Doc. 30; Trans. 34), and therefore that a proceeding initiated by a rule to show cause order would be a nonjudicial proceeding because it was a summary proceeding at its genesis. The Court declines to draw such a line at this time.

In support of its position, the IRS further emphasizes the fact that the Pennsylvania tax sale is a judicial sale because it is called a judicial sale. (Doc. 18, p. 6; Doc. 30; Trans. 9). Further, the IRS notes that both *Aultman* and *Acquisto* involved a Pennsylvania tax sale, and both cases characterized the tax sale as a judicial sale. (Doc. 31, p. 1).[6] While the Court is not persuaded by the argument that, because the state law defines the Pennsylvania free and clear

---

[6] The Bank notes, however, that the parties in *Aultman* did not raise the argument that the tax sale was not a judicial sale. (Doc. 30, Trans. 17).

18

tax sale as a "judicial sale" then it must also be so defined under the federal statute, the Court is persuaded by the argument that district courts within the Third Circuit have treated a Pennsylvania tax sale as a judicial sale under federal law. (Doc. 31, pp. 1-2; Doc. 30, Trans. 9).

IV. **CONCLUSION**

The Court holds that the May 2, 2012, Pennsylvania tax sale was a judicial sale. This Court's holding is two-fold: First, the Court finds that the Court of Common Pleas for Monroe County's order, dated March 20, 2012 (Doc. 22, p. 29), directing the Monroe County Tax Claim Bureau to conduct a judicial tax sale, is an "order directing sale" as defined in *A.H. and R.S. Coal Corp.*, 461 F.Supp. 752.[7] There is no question that the sale was initiated upon a court order *directing* sale of the property. Whether this procedure rises to the level of a "plenary proceeding" urged by Plaintiff is of no consequence; the Court declines to adopt the plenary/non-plenary approach in determining whether a tax sale under Pennsylvania law is a judicial sale for 26 U.S.C. § 7425(a) purposes. Instead, the Court follows the precedent within this Circuit, articulated by the Western District of Pennsylvania, to guide its decision that a court order directing sale is sufficient to classify a tax sale as a judicial sale.

Second, the district court cases in the Third Circuit that have considered the statutory requirements of a Pennsylvania tax sale have characterized the tax sale as a judicial sale

---

[7] In the same vein, Pennsylvania state courts have distinguished an "upset tax sale" from a "judicial tax sale" based on whether the sale was directed by court order. An upset tax sale is conducted by the Tax Bureau and governed by certain notice provisions. *See* 72 P.S. §§ 5860.605-609. When property is sold at an upset sale, "no petition need be filed in the common pleas court and, therefore, no court order is needed for the property to be sold. Therefore, an upset tax sale conducted by the Bureau cannot be considered to be a *judicial* sale." *Murphy v. Monroe County Tax Claim Bureau*, 784 A.2d 878, 881 (Pa. Commw. Ct. 2001).

pursuant to 26 U.S.C. § 7425(a). *See Acquisto v. United States*, 2010 WL 2852900; *United States v. Aultman*, 2006 WL 544401. The Court acknowledges that whether the tax sale was a judicial sale was not the holding of *Aultman*, or *Acquisto* for that matter. Regardless, both the Middle District of Pennsylvania and the Western District of Pennsylvania construed the tax sale proceedings in those cases, held in accordance with 72 P.S. § 5860.612, as judicial sales pursuant to 26 U.S.C. § 7425(a).

Accordingly, the Court finds that the May 2, 2012, tax sale proceeding was a judicial sale pursuant to 26 U.S.C. § 7425(a). Because the IRS did not receive proper statutory notice as required under § 2410(b) and § 7425(a), the tax liens on the subject property were not divested. The Court will deny the motion for summary judgment of Plaintiff (Doc. 16), grant the motion for summary judgment of Defendant (Doc. 17), and enter judgment in favor of the Defendant, the United States of America, Internal Revenue Service. The two IRS tax liens on the subject property survive the May 2, 2012 tax sale.

An appropriate Order will follow.

Dated: June 20, 2014                                    *s/ Karoline Mehalchick*
                                                       **KAROLINE MEHALCHICK**
                                                       **United States Magistrate Judge**